# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF OKLAHOMA

1.  KURT ACLIN and                                    )
2.  BEVERLY ACLIN, husband and wife;                  )
3.  ALICE ADAMS, an individual;                       )
4.  FRANK ADAMS and                                   )
5.  SCARLETT ADAMS, husband and wife;                 )
6.  MARY ADAMS and                                    )
7.  RONALD W. ADAMS, wife and husband;                )
8.  IRENE AIKEN, an individual;                       )
9.  ROY ALEXANDER, an individual;                     )
10. CHERYL ALLEN and                                  )
11. RANDY L. ALLEN, wife and husband;                 )    CIV-15-561-R
12. LINDA ALLEN, an individual;                       )
13. KIMBERLY ALSTON, an individual;                   )
14. JUAN ALVAREZ, an individual;                      )
15. JASON ANDERSON, an individual;                    )
16. CAROL ARELLANES and                               )
17. RICHARD ARELLANES, wife and husband;              )
18. LARRY ASHFORD and                                 )
19. CATHERINE ASHFORD, husband and wife;              )
20. SUZANNE BACZANSKI and                             )
21. JOHN BACZANSKI, wife and husband;                 )
22. BARBARA BANNON, individually and next of          )
    kin to CLARA C. BASEL, deceased;                  )
23. ELVINA BARKER, an individual;                     )
24. CARLTON BEARD, an individual;                     )
25. JEANNE BEARD, an individual;                      )
26. DARLENE BEATTIE and                               )
27. LARRY T. BEATTIE, wife and husband;               )
28. JOSEPHINE BELCER, an individual;                  )
29. SHIRLEY BENEDETTO and                             )
30. ROBERT BENEDETTO, wife and husband;               )
31. ANASTASIA BERNA, an individual;                   )
32. JAMES BERRY, an individual;                       )
33. JERRY BERRY, an individual;                       )
34. ANNE BERTOLDI and                                 )
35. WILLIAM J. BERTOLDI, JR., wife and                )
    husband;                                          )
36. WILLIAM BILLADEAU and                             )
37. WANDA JOYCE BILLADEAU, husband and                )
    wife;                                             )
38. DEBRA BILLINGSLEA, individually and next          )

of kin to CURTISTINE SINGLETON, deceased;    )
39. DESEAN BLAKE, individually and next of kin    )
    to ROSEMARY L. MOORE, deceased;    )
40. VANESSA BLAKENEY, an individual;    )
41. MESLIN BLOUNT and    )
42. EDITH BLOUNT, wife and husband;    )
43. ARLENE BOMMARITO, an individual;    )
44. DONNA BOYDSTON and    )
45. SCOTT L. LOTT, wife and husband;    )
46. ADDIE BOYETTE and    )
47. NORMAN BOYETTE, wife and husband;    )
48. SALLY BRAIDO and    )
49. JOHN BRAIDO, wife and husband;    )
50. BERNARD BRANDON, an individual;    )
51. RICK BRESHEARS and    )
52. EVIA BRESHEARS, husband and wife;    )
53. ANTHONY BROWN and    )
54. CAROLINE BROWN, husband and wife;    )
55. DUANE BROWN and    )
56. ELIZABETH BROWN, husband and wife;    )
57. RUBY BROWN, an individual;    )
58. TAMMY BUCKNER, an individual;    )
59. MARLYN BUGGS and    )
60. CARL M. BUGGS, wife and husband;    )
61. FRANCES BURKS, an individual;    )
62. KENNETH BURNS and    )
63. LINDA JAMES BURNS, husband  and wife;    )
64. HOWARD BURRELL and    )
65. DEBORAH BURRELL, husband and wife;    )
66. MICHAEL BYARS, an individual;    )
67. JACK BYRD, individually and next of kin to    )
    DAVIS BYRD, deceased;    )
68. KAREEM CANNON as legal guardian for    )
    LILLIE CANNON;    )
69. TANYA CARROLL, an individual;    )
70. THOMAS CARSON and    )
71. MARY LOUISE CARSON, husband and wife;    )
72. EMILY CARTER, an individual;    )
73. M. DIANA CARTWRIGHT, individually and    )
    next of kin to JANET L. ANDERSON-    )
    PASSINO, deceased;    )
74. CAROL CASH, an individual;    )
75. ANNA CELENTANO, an individual;    )
76. FRANCINE CERBONE, an individual;    )
77. DOROTHY CHAPMAN, an individual;    )
78. BRENDA CLEMONS, individually and next of    )

```
      kin to RONALD CLEMONS, deceased;           )
79. VERONICA  COKER and                          )
80. ROBERT A. COKER, wife and husband;           )
                                                 )
            Plaintiffs,                           )
                                                 )
vs.                                              )
                                                 )
1.  PD-RX PHARMACEUTICALS, INC.;                 )
2.  PHYSICIANS DISPENSING RX, INC.;              )
3.  ELI LILLY AND COMPANY;                       )
4.  AAIPHARMA, INC.;                             )
5.  AAIPHARMA LLC;                               )
6.  AAIPHARMA, DEVELOPMENT SERVICES,             )
    INC.;                                        )
7.  NEOSAN PHARMACEUTICALS INC;                  )
8.  XANODYNE PHARMACEUTICALS, INC.;              )
9.  QUALITEST PHARMACEUTICALS, INC.;             )
10. VINTAGE PHARMACEUTICALS, INC.;               )
11. PROPST DISTRIBUTION, INC.;                   )
12. BRENN DISTRIBUTION, INC.;                    )
13. BRENN MANUFACTURING, INC.;                   )
14. VINTAGE PHARMACEUTICALS, LLC;                )
15. GENERICS INTERNATIONAL (US), INC.;           )
16. GENERICS BIDCO I, LLC;                       )
17. GENERICS BIDCO II, LLC;                      )
18. GENERICS INTERNATIONAL (US                   )
    PARENT), INC.;                               )
19. ENDO PHARMACEUTICALS, INC.;                  )
20. ENDO PHARMACEUTICALS HOLDINGS                )
    INC.;                                        )
21. CORNERSTONE BIOPHARMA, INC.;                 )
22. CORNERSTONE BIOPHARMA HOLDINGS,              )
    INC.;                                        )
23. TEVA PHARMACEUTICALS USA, INC.;              )
24. MYLAN PHARMACEUTICALS, INC.;                 )
25. MYLAN, INC.;                                 )
26. COVIDIEN PLC;                                )
27. COVIDIEN INC.;                               )
28. MALLINCKRODT INC.;                           )
29. WATSON PHARMACEUTICALS, INC.; and            )
30. DOES 1 through 50, inclusive,                )
                                                 )
            Defendants.
```

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, *et seq.*, Defendant Eli Lilly and Company ("Lilly") hereby removes the state court action, *Aclin, et al. v. PD-Rx Pharmaceuticals et al.*, from the District Court for Stephens County, Oklahoma, to the United States District Court for the Western District of Oklahoma, and alleges as follows:

1.      As shown below, there is jurisdiction over this removed action pursuant to 28 U.S.C. § 1441 because this action originally could have been filed in this Court pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1367. Specifically, this Court has subject-matter jurisdiction over this action because there is the requisite diversity of citizenship between each of the properly joined Plaintiffs and the properly joined Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[1] Moreover, Plaintiffs' claims against Generic Defendants are removable because they necessarily raise a substantial and disputed question of federal law and all remaining claims are subject to this Court's supplemental jurisdiction.

## I.      PRELIMINARY STATEMENT

2.      This action, in which Plaintiffs allege personal injuries from prescription medications containing propoxyphene, is an extreme case of an attempt to avoid the federal courts, which have held that the vast majority of such claims must be dismissed

---

[1] Although there is an MDL for propoxyphene cases, on July 17, 2014, the JPML issued a Minute Order suspending Rule 7.1(a) governing tag along actions. *See In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, MDL No. 2226, Dkt. No. 497 (J.P.M.L. July 17, 2014).

on the pleadings under state and federal law. So extreme is the attempt to avoid federal jurisdiction that the Plaintiffs in this action have failed to disclose even their own citizenship, except to state that certain unidentified Plaintiffs are not diverse from certain Defendants. Indeed, it is unclear whether this action even involves any Oklahoma Plaintiffs. In addition to refusing to disclose their own citizenship, Plaintiffs have filed eight identical actions with less than 100 Plaintiffs each to avoid removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11), have filed multi-plaintiff complaints against a host of Defendants to frustrate complete diversity with regard to certain Plaintiffs, who hail from around the country, and have added a single, local distributor, PD-Rx, in an attempt to frustrate removal under the forum defendant rule.

3.    However, the federal courts have recognized numerous doctrines that prevent Plaintiffs' gamesmanship from depriving Defendants of the federal forum to which they are entitled. The Court, therefore, can and should look past Plaintiffs' improper pleading and find jurisdiction under the following legal doctrines:

4.    **Fraudulent joinder:** Fraudulent joinder recognizes that a party's citizenship does not frustrate removal where substantive law conclusively precludes relief for or against it. Here, Plaintiffs' Petition is vague and conclusory regarding the allegations against the non-diverse Defendants. All of the Generic Defendants are fraudulently joined because the claims against them are preempted by federal law, as the Sixth Circuit held in related litigation. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014). In addition, PD-Rx is fraudulently joined because distributor liability is barred by both federal and state law.

5.      **Personal jurisdiction:** Under the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014), Plaintiffs cannot establish personal jurisdiction in Oklahoma.  As such, this Court may find that the foreign, non-diverse Defendants are fraudulently joined due to lack of personal jurisdiction.

6.      **Procedural misjoinder:** Procedural misjoinder recognizes that a joinder of parties that is prohibited by procedural rules governing permissive joinder will not destroy complete diversity.  Here, Plaintiffs' claims are misjoined because they all arise from unique and individualized medical circumstances, rather than the "same transaction, occurrence, or series of transactions or occurrences," FED. R. CIV. P. 20, and the Court may therefore look past that improper joinder and find jurisdiction over all of the individual lawsuits where the parties are completely diverse.

7.      **Federal question:**   Federal jurisdiction exists when a state law claim involves the application of federal law.   Here, Plaintiffs' claims necessarily involve application of federal law and FDA-approved labeling.   *See PLIVA v. Mensing*, 131 S. Ct. 2567 (2011).  As such, this Court properly has federal question jurisdiction and may appropriately hear related claims under 28 U.S.C. § 1367(a).

8.      Accordingly, for the reasons set forth below, there is federal jurisdiction over this action and removal is proper.

## II.      AMOUNT IN CONTROVERSY IS SATISFIED

9.      Under the Supreme Court's recent decision in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), Lilly need only assert factual allegations that give rise to a plausible inference that the amount in controversy

requirement is satisfied. It is apparent from the face of the Complaint, and the serious injuries alleged, that the amount in controversy in this action, and as to each Plaintiff, exceeds $75,000.[2]

10.    In this case, 80 Plaintiffs seek, at a minimum, $2,000 per Plaintiff and per violation for alleged violations of Oklahoma's Consumer Protection Act. Petition ¶ 521.

11.    The Plaintiffs seek compensatory damages "for personal injury, including permanent impairment, physical injury, physical and mental pain and suffering, distress, loss of enjoyment of life, and loss of consortium." Petition Prayer ¶ 2. Additionally, Plaintiffs seek compensation for future medical expenses, and lost wages and earning capacity. Petition Prayer ¶¶ 2-8. Courts routinely hold that allegations of such injuries satisfy the amount in controversy requirement. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955-58 (10th Cir. 2008) (denying motion to remand a wrongful death action finding that the amount in controversy had been met when the Petition alleged serious bodily injury, wrongful death, punitive damages, and other relief under Oklahoma law); *Stiles v. Chattem*, No. 10-cv-0598, 2011 WL 90321, at **4-5 (N.D. Okla. Jan. 11, 2011) (finding that the Petition exceeded the amount in controversy when it alleged severe injuries, loss of consortium, and death); *In re Rezulin Prods. Liab. Litig*, 133 F. Supp. 2d 272, 296

---

[2] Lilly notes that it is not required to concede that Plaintiffs are, in fact, entitled to recover more than $75,000. *See Kelderman v. Remington Arms Co.*, 734 F. Supp. 1527, 1528 (S.D. Iowa 1990) (rejecting a plaintiff's attempt to "place [a] defendant in the awkward position of embracing a concession on the important issue of damages," to establish jurisdiction, noting that a "defendant need not go that far"). Indeed, Lilly specifically denies that Plaintiffs are entitled to recover any damages.

(S.D.N.Y. 2001) (finding that a Petition alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000").

12.    Moreover, Plaintiffs seek punitive damages, Petition ¶¶ 525-535, which are included in the calculation of the amount in controversy. *See Bell v. Preferred Life Ass. Soc.,* 320 U.S. 238, 240 (1943); *Gulley v. Farmers Ins. Co. Inc.*, No CIV-08-0401-F, 2008 WL 2166733, at *2 (W.D. Okla. May 21, 2008); *Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191, 1198 (N.D. Okla. 2004).

13.    Based on the allegations of Plaintiffs' Petition, Lilly avers that the amount in controversy exceeds $75,000, exclusive of interests and costs. *See McPhail*, 529 F.3d at 955 ("A Petition that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal.").

## III.    DIVERSITY IS SATISFIED

### a.    Citizenship of the Parties.

14.    The Petition does not allege the citizenship of any individual Plaintiff. The Petition merely states that "[a]t least one plaintiff is a resident of North Carolina, the same state where Defendant Cornerstone Biopharma Inc. is a resident." Petition ¶¶ 92-93. Additionally, although the Petition vaguely alleges that "PD-Rx is and was engaged in the business of marketing, [and] distributing . . . Propoxyphene Products nationwide and specifically within the State of Oklahoma, including Pottawatomie and Stephens Counties, where Plaintiffs resided and/or ingested Propoxyphene Products," Petition ¶ 22, Plaintiffs do not identify a single plaintiff who is a citizen of Oklahoma.

8

15.    PD-Rx Pharmaceuticals, Inc. and Physicians Dispensing Rx (collectively "PD-Rx") are Oklahoma corporations with their principal places of business in Oklahoma. Petition ¶ 22. Upon information and belief, PD-Rx has been served.

16.    Lilly is an Indiana corporation with its principal place of business in Indiana. Petition ¶ 27. Lilly has been served.

17.    aaiPharma, Inc., AAIPharma Development Services, Inc., and aaiPharma LLC, and NeoSan Pharmaceuticals, Inc. (collectively "aaiPharma entities") are alleged Delaware corporations with their principal places of business in North Carolina. Petition ¶¶ 28-31. However, these aaiPharma entities are now, and have been since 2010, inactive Delaware companies with no principal places of business. Exh. 16 (discussed below Section III.b.iv.). Not surprisingly, upon information and belief, the aaiPharma entities have not been served. Thus, for jurisdictional purposes, the aaiPharma entities are citizens of Delaware only.

18.    Xanodyne Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business in Kentucky. Petition ¶ 33. Upon information and belief, Xanodyne has not been properly served.[3]

19.    Brenn Distribution, Inc. f/k/a Propst Distribution, Inc. f/k/a Qualitest Pharmaceuticals, Inc. is an Alabama corporation with its principal place of business in

---

[3] Upon information and belief, Plaintiffs attempted to serve Xanodyne via Corporation Service Company ("CSC") in California; however, CSC is not, and was not at the time of attempted service, Xanodyne's agent for service of process in California. *See* California Secretary of State's website, Business Programs, Business Entity Detail, at http://kepler.sos.ca.gov.

Alabama. Petition ¶¶ 41-42, 46-47. Upon information and belief, Brenn Distribution, Inc. has been served.

20.     Brenn Manufacturing, Inc. f/k/a Vintage Pharmaceuticals, Inc. is an Alabama corporation with its principal place of business in Alabama. Petition ¶ 43, 46, 48. Upon information and belief, Brenn Manufacturing, Inc. has been served.

21.     Generics International (US), Inc. is a Delaware corporation with its principal place of business in Alabama. Petition ¶ 50. Upon information and belief, Generics International (US), Inc. has been served.

22.     Vintage Pharmaceuticals, LLC, Generics Bidco, I, LLC, and Generics Bidco, II, LLC are all limited liability companies and therefore have the citizenship of their members for purposes of diversity. Generics International (US), Inc. is the sole member of each of these three Defendants and they are therefore citizens of Delaware and Alabama. Upon information and belief, Vintage Pharmaceuticals, LLC, Generics Bidco, I, LLC, and Generics Bidco, II, LLC have been served.

23.     Endo Pharmaceuticals, Inc. and Endo Pharmaceuticals Holdings, Inc., are Delaware corporations with their principal places of business in Pennsylvania. Petition ¶¶ 54-55. Upon information and belief, Endo Pharmaceuticals, Inc. and Endo Pharmaceuticals Holdings, Inc. have been served.

24.     Cornerstone BioPharma, Inc. is a Nevada corporation and Cornerstone BioPharma Holdings, LLC (f/k/a Cornerstone BioPharma Holdings, Inc.) is a Delaware limited liability company (collectively "Cornerstone"), with their principal places of business in North Carolina. Petition ¶¶ 56-57. Upon information and belief, Cornerstone

has been served. Thus, for jurisdictional purposes, Cornerstone is a citizen of North Carolina, but for the reasons set forth below, Cornerstone has been fraudulently joined and, thus, its citizenship must be disregarded for purposes of determining the propriety of removal.

25.    TEVA Pharmaceuticals USA, Inc. is a Delaware corporation with its principal place of business in Pennsylvania. Petition ¶ 70. Upon information and belief, TEVA Pharmaceuticals USA, Inc. has been served.

26.    Teva Biopharmaceuticals, Inc. is a Delaware corporation with its principal place of business in Maryland. However, Teva Biopharmaceuticals, Inc. is not a named defendant in the Petition nor are there any allegations in the body of the Petition relating to Teva Biopharmaceuticals, Inc.[4]    The Petition is completely silent regarding Teva Biopharmaceuticals except to allege that Teva Biopharmaceuticals is a citizen of Maryland. Thus, because it is not a named party, Plaintiffs cannot sustain a cause of action against Teva Biopharmaceuticals and cannot use Teva Biopharmaceuticals' Maryland citizenship to destroy diversity. Nevertheless, upon information and belief, Teva Biopharmaceuticals, Inc. has not been served.

27.    Mylan Pharmaceuticals, Inc. is a West Virginia corporation with its principal place of business in West Virginia. Petition ¶ 74. Upon information and belief, Mylan Pharmaceuticals, Inc. has been served.

---

[4] The Petition is rightly silent as to Teva Biopharmaceuticals, Inc. since publicly available documents establish Teva Biopharmaceuticals, Inc. never manufactured, marketed, sold or distributed propoxyphene containing medications and never held any applicable ANDAs for propoxyphene.

28.     Mylan, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania.  Petition ¶ 75.  Upon information and belief, Mylan, Inc. has been served.

29.     Upon information and belief, Covidien plc was an Ireland Public Limited Company.  Upon information and belief, Covidien plc has <u>not</u> been served.

30.     Upon information and belief, Covidien Inc. is the former name of a Delaware corporation with its principal place of business in Massachusetts.  Upon information and belief, Covidien Inc. has been served.

31.     Upon information and belief, Mallinckrodt Inc. is a Delaware corporation with its principal place of business in Missouri.  Upon information and belief, Mallinckrodt has been served.

32.     Watson Pharmaceuticals, Inc. is a Nevada corporation with its principal place of business in California.  Petition ¶ 87.  Upon information and belief, Watson Pharmaceuticals, Inc. has been served.

> **b.     Complete Diversity Is Satisfied Due to Fraudulent Joinder of Defendants.**

33.     "To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (citations omitted).  In a fraudulent-joinder claim, the court may "pierce the pleadings, consider the entire record, and determine the

basis for joinder by any means available." *Dodd v. Fawcett Publ'ns., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted).

34.    As noted above, no individual Plaintiff alleges a state of residence or citizenship.  Rather, Plaintiffs allege only that "federal diversity jurisdiction is lacking in this action" because "at least one plaintiff" (who remains unidentified) is a resident or citizen of North Carolina, and "at least one plaintiff" (again unidentified) is a resident or citizen of Maryland.[5]  Petition ¶¶ 93-94.  Plaintiffs make no allegations that any individual Plaintiff is a resident or citizen of Oklahoma or that federal diversity jurisdiction is lacking based on diversity issues between any particular plaintiff and Oklahoma Defendant PD-Rx.  For the reasons set forth below, the non-diverse Defendants have been fraudulently joined and their citizenship should be disregarded.

i.    Cornerstone and aaiPharma[6] Are Fraudulently Joined.

35.    Plaintiffs fraudulently joined Cornerstone and aaiPharma in an attempt to defeat diversity jurisdiction.  Plaintiffs do not allege that any of the non-diverse Plaintiffs ingested a propoxyphene product manufactured by the non-diverse Defendant.

---

[5] Teva Biopharmaceuticals, Inc. is not a named defendant in the Petition, nor does the Petition name any other defendant that is deemed to be a Maryland resident for purposes of diversity jurisdiction. Teva Biopharmaceuticals, Inc. is not identified in the caption, and the sole mention of Teva Biopharmaceuticals is in paragraph 94 of the Petition, which asserts only its supposed state of citizenship. There is not a single allegation of wrongdoing against it.

[6] As noted *supra,* there are no claims against Teva Biopharmaceuticals. To the extent Plaintiffs allege that they intended to assert claims against Teva Biopharmaceuticals, these arguments would apply equally to Teva Biopharmaceuticals.

36.    For example, the Petition vaguely states that "[a]t least one plaintiff is a resident of North Carolina, the same state where Defendant Cornerstone Biopharma, Inc. is a resident." Petition ¶ 93.[7]  Moreover, the "Plaintiffs" section of the Petition is completely silent regarding aaiPharma. *See* Petition ¶¶ 91-95.

37.    Notably, however, the Petition does not allege that the unidentified North Carolina Plaintiff ingested a Cornerstone or an aaiPharma product.   Those blatantly generic and conclusory allegations against the non-diverse Defendants further demonstrates fraudulent joinder. *See, e.g., Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907) (upholding a finding of fraudulent joinder when there was no factual basis for the claim of negligence against the non-diverse defendant); *Miner v. Hirshback Motor Lines, Inc.*, No. 1:05cv0703, 2005 WL 1377875, at *1 (N.D. Ohio June 7, 2005) (noting that actively "investigating the basis" for a claim "does not relieve [plaintiff] of the obligation of having made some specific factual allegation in her complaint that would justify a reason to believe she has a *bona fide* claim against the [Defendant].  But there is none, and that is not sufficient to overcome the defendants' claim of fraudulent joinder.") (emphasis in original); *TPS Utilicom Svcs. Inc. v. AT & T Corp.*, 223 F. Supp. 2d 1089, 1103 (C.D. Cal. 2002) (denying motion to remand after plaintiff admitted in remand briefing that "it does not have a factual basis for asserting claims against resident defendants but only joined them 'out of reasonable belief that

---

[7] Moreover, the Petition states that "[a]t least one plaintiff is a resident of Maryland, the same state where Defendant Teva Biopharmaceuticals, Inc. is a resident," Petition ¶ 94, but it does not name Teva Biopharmaceuticals as a defendant or assert any other allegations against Teva Biopharmaceuticals.

each defendant may have been a responsible party'"); *Arno v. Coast Line, Inc.*, 589 F. Supp. 1576, 1581 (E.D.N.Y. 1984) (finding "the record here reveals that plaintiff did not adequately investigate the identity of the defendants in preparation of this action . . . . [J]oinder in a case such as this can . . . be considered fraudulent . . . .").

38.    In fact, the Petition does not allege *any* specific acts by Cornerstone or aaiPharma.    Rather, the Petition merely refers to allegations against "Defendants" generally.    Other courts have found defendants fraudulently joined by similar, vague allegations. *See e.g. Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408 (10th Cir. 1958) (finding fraudulent joinder when the "complaint failed to charge in specific terms any specific act on the part of the individual defendants which constituted an affirmative direction, sanction, participation, or cooperation in the alleged tortious act of the corporate defendant"); *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 391-93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiffs' claims simply referred to "defendants" collectively and where plaintiffs failed to allege any "particular or specific activity" on the part of each of the in-state defendants); *Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 844 (N.D. Tex. 2003) (holding the allegation that "Defendants committed actual fraud" insufficient to warrant remand); *Banger v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("conclusory and generic allegations of wrongdoing on the part of all Defendants . . . are not sufficient to show that [non-diverse defendant] was not fraudulently joined"); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 & n.10 (S.D.N.Y. 2001) (explaining remand should be denied where "plaintiffs make no specific allegations against [the non-diverse defendant] at all,

15

instead [they] attribut[e] wrongdoing to the collective 'defendants'"); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying remand where the complaint "commonly employs the generic term 'defendants'"); *Reeser v. NGK Metals Corp.*, 247 F. Supp. 2d 626, 630 (E.D. Pa. 2003) (holding that claims consisting of "conclusory allegations" are "clearly insufficient" to oppose a claim of fraudulent joinder and are "not colorable"); *Perry v. Clear Channel Broad.*, No. 2:07cv134, 2008 WL 190573, at *3 (S.D. Miss Jan. 18, 2008) (explaining "the litany of allegations are lodged against the Defendants, en masse, and no allegations are made specifically applicable to [a single defendant] . . . . [b]ecause neither the alleged facts nor the evidence submitted form a reasonable basis for predicting the Plaintiff might recover against [individual defendant], they are improperly joined"); *Indian Gold, LLC v. Amstar Mort. Corp.*, 504 F. Supp. 2d 147, 150 (S.D. Miss. 2007) (stating "[c]onclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that a defendant was not fraudulently joined"); *Weiss v. Fujisawa Pharm. Co.*, 415 F. Supp. 2d 720, 724 (E.D. Ky. 2005) (finding in-forum drug representatives were fraudulently joined because there was no factual allegations that the representatives had any contact with the plaintiff or plaintiff's physician); *Jones v. Kroger, Co.*, No. 05-72513, 2005 WL 2649257, at *3 (E.D. Mich. Oct. 17, 2005) (holding that a complaint alleging only general allegations as to forum defendant is sufficient to find fraudulent joinder); *Cranston v. Mariner Healthcare Mgmt., Co.*, No. 3:03cv10, 2003 WL 21517999, at **3-4 (N.D. Miss. June 18, 2003) (holding "Plaintiffs merely allege, in very general and conclusory terms, that the Defendants collectively engaged in tortuous conduct. . . .

16

Accordingly, without a factual basis for concluding that [defendant] directly, personally, or actively participated in any alleged tortuous conduct, the court finds that the Plaintiffs have no possibility of establishing a cause of action . . . in state court, and that [defendant] was fraudulently joined").

39.    For the reasons set forth above, there is no reasonable basis for a claim against Cornerstone or aaiPharma and, thus, Plaintiffs' naming those Defendants in this action does not defeat removal on the basis of diverse citizenship of the parties.

ii.    <u>PD-Rx and Cornerstone[8] (and All Other Generic Defendants) Are Fraudulently Joined Due to Preemption.</u>

40.    Plaintiffs' claims against all Generic Defendants are barred by the United States Supreme Court decision in *Pliva v. Mensing*, 131 S.Ct. 2567 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013).

41.    In *Mensing,* the Supreme Court held that state-law claims challenging the labeling of a generic prescription medication are preempted, because federal law requires generic defendants to use the same labeling as the brand-name manufacturer and prohibits those generic defendants from independently changing the FDA-approved labeling. *Mensing*, 131 S. Ct. at 2577-78. Likewise, in *Bartlett* the Supreme Court recognized preemption of claims challenging the design of generic medications, which generic defendants are powerless to change. The MDL court responsible for propoxyphene litigation held that plaintiffs had wholly failed to plead any non-preempted

---

[8] As noted *supra,* there are no claims against Teva Biopharmaceuticals. To the extent Plaintiffs intended to allege that Teva Biopharmaceuticals is a generic manufacturer, these arguments would apply equally to Teva Biopharmaceuticals.

claims against the Generic Defendants, and its rulings were affirmed on appeal. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, MDL No. 2226, 2012 WL 718618, at *3 (E.D. Ky. Mar. 5, 2012); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014).

42.    The crux of Plaintiffs' claims against Cornerstone is an alleged failure to warn, which is preempted under *Mensing*, and defective design, which is preempted under *Bartlett*. This is precisely what the propoxyphene MDL court held, and its rulings were affirmed in all respects by the Sixth Circuit. As such, because Cornerstone is a generic manufacturer, *see* Petition ¶¶ 63, 66-69, Plaintiffs lack a reasonable basis for recovery in accordance with the Supreme Court's decision in *Mensing* and *Bartlett*, and Cornerstone, therefore, is fraudulently joined. Thus, as a fraudulently joined defendant, Cornerstone's citizenship should be disregarded. *See Johnson v. Amer. Towers, LLC*, 781 F.3d 693, 705 (4th Cir. 2015) (finding the non-diverse defendant fraudulently joined when the claims against it were preempted by federal law).

43.    Similar to the generic manufacturers, and even more so, PD-Rx as a distributor was powerless to change an FDA-approved label. *See In re Fosamax Prods. Liab. Litig.*, MDL No. 2243, 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2012) (finding that the claims against a distributor were preempted because a distributor does not have the power to change an FDA-approved product's label). Thus, under *Mensing, Bartlett,* and *In re Fosamax*, PD-Rx is fraudulently joined, and its citizenship should be disregarded.

iii.    PD-Rx Is Fraudulently Joined for Additional Reasons.

44.    PD-Rx is an Oklahoma Corporation.  Petition ¶ 22.  However, to the extent any Plaintiffs are residents/citizens of Oklahoma[9] (which Plaintiffs have not specifically alleged), this Court should disregard PD-Rx's citizenship because Plaintiffs cannot maintain their claims against PD-Rx.

45.    Plaintiffs cannot defeat removal by "fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).  Thus, the joinder of a non-diverse or in-state defendant will not preclude removal if the plaintiff cannot make a colorable claim against that defendant. *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1276 (N.D. Okla. 2006).

46.    Notably, Plaintiffs do not specifically allege that the propoxyphene products they ingested were distributed by PD-Rx, nor does the Petition contain any factual allegations of any independent act or omission by PD-Rx which could reasonably establish any cause of action against PD-Rx.  Rather, Plaintiffs make blanket allegations that PD-Rx distributed propoxyphene "nationwide and specifically within the State of Oklahoma, including Pottawatomie and Stephens Counties."  Petition ¶ 22.  Thus, other than a blanket allegation that Plaintiffs "ingested Propoxyphene Products manufactured, marketed, distributed, and sold by Defendants," Petition ¶ 91, Plaintiffs' claims against

---

[9] To the extent none of the Plaintiffs "resided and/or ingested Propoxyphene Products" in Oklahoma, *see* Petition ¶ 22, Defendants reserve the right to raise the grounds of "actual fraud in the pleading of jurisdictional facts" as an additional argument in support of removal.

PD-Rx are completely lacking factual support. *See Lobato,* 261 F.2d at 408 (finding fraudulent joinder where "complaint failed to charge in specific terms any specific acts on the part of the individual defendants which constituted an affirmative direction, sanction, participation or cooperation in the alleged tortious act of the corporate defendant . . . .").

47.    In evaluating a claim for fraudulent joinder, the court may look beyond the pleadings and consider outside evidence. *Smoot v. Chicago, Rock Island & Pacific R.R. Co.,* 378 F.2d 879, 881-82 (10th Cir. 1967).   The declaration of PD-Rx conclusively establishes that Plaintiffs cannot sustain a claim against PD-Rx.

48.    The declaration confirms that PD-Rx was, as Plaintiffs acknowledge, merely a distributor of propoxyphene products.  Exh. 15, ¶ 3.  It further states that PD-Rx did not manufacture any propoxyphene products, and was not the NDA holder for any propoxyphene products. *Id.*

49.    As to PD-Rx, Plaintiffs allege that PD-Rx distributed "propoxyphene with inaccurate and outdated labeling, nationally, and specifically in the State of Oklahoma." Petition ¶ 23.   Plaintiffs' claims against PD-Rx sound in failure to warn.[10]   Under

---

[10] To the extent Plaintiffs argue that they are also asserting claims under Oklahoma's consumer protection statute and/or warranty claims, Plaintiffs have no colorable claim. Oklahoma's consumer protection statute specifically excludes claims involving pharmaceutical sales.  Okla. Stat. 15 § 754(2) ("Nothing in this Act shall apply to:... Actions or transactions regulated . . . under statutory authority of this state or the United States . . . ."); *Arnett v. Mylan, Inc.,* No. 2:10-cv-00114, 2010 WL 2035132, at *3 (S.D. W. Va. May 20, 2010) (finding that the Oklahoma Consumer Protection Act excludes sales of pharmaceutical products).   Moreover, as to any claims regarding breach of warranty, outside of the labeling, Plaintiffs do not allege that PD-Rx made any separate

established Oklahoma law,[11] and as held by courts in other jurisdictions, a distributor

cannot be held liable for a failure to warn claim involving a prescription medication. *See*

*White v. Mylan*, No. CIV-12-402, 2012 WL 6726593, at **3-4 (E.D. Okla. Dec. 27,

2012) (holding that the pharmacy had been fraudulently joined because the learned

intermediary doctrine precluded liability for failure to warn); *see also Negrin v. Alza*

*Corp.,* No. 98-civ-4772, 1999 WL 144507, at *5 (S.D.N.Y. Mar. 17, 1999) (finding that a

case was properly removed when there were "no allegations in the Complaint that the

[medication] was dispensed without such a prescription or that the prescription was

incorrectly filled," and there were no "factual allegations regarding specific actions taken

by [the pharmacy] other than it sold the drug"); *Ramirez v. Richardson-Merrell, Inc.*, 628

F. Supp. 85, 87 (E.D. Pa. 1986) (listing cases which have held that "pharmacists should

not be held strictly liable for injuries sustained as the result of the ingestion of certain

drugs" and do not have an obligation to test or warn).

50.    As such, Plaintiffs cannot have a claim against PD-Rx because there is no

causal connection between PD-Rx's alleged actions and Plaintiffs' alleged injuries.

*Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1365 (Okla. 1974) ("[R]esponsibility for

the defect must still be traced to the proper Defendant."); *Edwards v. Pepsico, Inc.*, 268

---

representations to them.  Thus, Plaintiffs cannot maintain a cause of action for breach of
warranty.  *See* 12A Okla. Stat. §§2-313, 2-314.

[11] Lilly does not concede that Oklahoma law governs all aspects of this case or governs
any individual Plaintiff's claims against them.  For purposes of this Notice of Removal,
and as PD-Rx is alleged to be an Oklahoma citizen, Lilly will address the "distributor
liability" issue under Oklahoma law.

Fed. Appx. 756, 762 (10th Cir. 2008) (holding that "all defendants within the chain of distribution" are not "automatically liable for a defective product").

>    iv.    The aaiPharma Entities Are Fraudulently Joined for Additional Reasons.

51.    As discussed above, the aaiPharma entities have no principal place of business, let alone in North Carolina; moreover, aaiPharma's Delaware state of incorporation does not defeat diversity because there are no allegations that any Plaintiff resides in Delaware.

52.    The Tenth Circuit has not addressed whether an inactive corporation retains a principal place of business. *See Snyder v. Advanced Academics, Inc.*, CIV-14-1383, 2015 WL 1529022, at **1-3 (W.D. Okla. Apr. 3, 2015). Some circuits have held that "an inactive corporation has no principal place of business; it is a citizen only of its state of incorporation." *See Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1071 (11th Cir. 2012) and *Midatlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995); *but c.f. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 141 (2d Cir. 1991) (stating that an inactive corporation retains its last principal place of business). Moreover, the Fourth and Fifth Circuits take a "case by case" approach and consider the length of time of the inactivity. *See Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992) (stating that when "a corporation has been inactive in a state for a substantial period of time [] that state is not the corporation's principal place of business"); *Athena Auto, Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999) (focusing on the nature of the corporation's activities *at the time the action was commenced* to

determine whether that activity "was sufficient to make it a citizen of the state of such activity").

53.     As discussed above, the aaiPharma entities are now, and have been since 2010, inactive Delaware companies with no principal places of business.  Exh. 16.  As a matter of fact, the aaiPharma entities conducted no business (anywhere) after April 10, 2010.  Exh. 16.  Furthermore, they have no principal place of business and did not have any principal place of business in North Carolina (or any other state) after that time.  Exh. 16.

54.     This Court should adopt the approach from the Third and Eleventh Circuits finding that an inactive corporation cannot retain a principal place of business.  Even under a "case by case" approach, similar to that taken by the Fourth and Fifth Circuits, the aaiPharma entities have not transaction any business in over five years. *See Athena,* 166 F.3d at 291 (stating that three years of inactivity is sufficient to find that there was no principal place of business).  Thus, they cannot be deemed to have a principal place of business in North Carolina.

55.     Based on aaiPharma's inactivity, and the precedent set forth above, the aaiPharma entities were inactive corporations when this lawsuit was filed and, thus, are not citizens of North Carolina under § 1332.  Accordingly, their citizenship does not defeat diversity jurisdiction.

   c.    **Complete Diversity Is Satisfied Due to Lack of Personal Jurisdiction.**[12]

56.    To establish personal jurisdiction over a defendant, Plaintiffs must show that such defendant has "minimum contacts" with the forum state, such that defending the action would not "offend traditional notions of fair play and substantial justice." *Allen v. IM Solutions, LLC*, CIV-14-213, 2015 WL 71468, at *3 (E.D. Okla. Jan. 6, 2015) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). For the reasons set forth below, Plaintiffs fail to establish that this Court has general or specific personal jurisdiction over Cornerstone and aaiPharma.

57.    As the United States Supreme Court has explained, a defendant is subject to general jurisdiction only where it is "at home." *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)); *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012). "With respect to a corporation," the Supreme Court added, "the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760 (internal citations omitted). "[T]he exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . is unacceptably grasping." *Allen*, 2015 WL 71468, at *4 (quoting *Daimler*, 134 S. Ct. at 760-61).

---

[12] To the extent Cornerstone and/or aaiPharma file a motion to dismiss (or for judgment on the pleadings) for lack of personal jurisdiction, this Court has discretion to (and should) decide that issue before assessing whether federal subject-matter jurisdiction exists. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999).

58.     Plaintiffs do not allege (nor could they) that Cornerstone or aaiPharma is "at home" in Oklahoma.  In fact, the Petition alleges that Cornerstone is a Delaware corporation with a principal place of business in North Carolina.  Petition ¶¶ 56-57.  The aaiPharma entities are Delaware corporations with no principal places of business, as set forth above.  Furthermore, Plaintiffs have not asserted any facts, nor could they, suggesting that these Defendants have such continuous and systematic contacts with Oklahoma as to render the entities "at home" in this forum.  Accordingly, Oklahoma courts lack general jurisdiction over these Defendants.

59.     Specific jurisdiction is based on "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S.Ct. at 2851.  A court may exercise specific jurisdiction over a defendant with regard to a plaintiff's claims only if (1) the defendant has purposefully directed its activities at residents of the forum state, and (2) the individual plaintiff's alleged injuries arise out of or relate to those activities. *Allen*, 2015 WL 71468, at *6.

60.     Notably, the Petition does even contain a specific allegation that any individual Plaintiff resides in Oklahoma, let alone that any such person ingested a propoxyphene product manufactured and/or distributed by Cornerstone or aaiPharma. The Petition ambiguously asserts that "Plaintiffs are individuals . . . who ingested Propoxyphene Products manufactured, marketed, distributed, and sold by Defendants," Petition ¶ 91, and that "Defendants transacted, solicited, and conducted business in the State of Oklahoma and derived revenue from such business," Petition ¶ 17.  But the Petition is devoid of any factual allegations of purposefully-directed activity by

25

Cornerstone or aaiPharma at the forum state which could reasonably establish that an Oklahoma plaintiff (assuming that there even are any) ingested Cornerstone or aaiPharma products and/or were injured by them within the forum. The only pseudo-specific allegations contained in the Petition related to these non-forum Defendants is that "[a]t least one plaintiff is a resident of North Carolina, the same state where Defendant Cornerstone Biopharma Inc. is a resident."[13] Petition ¶ 93. The allegations against these Defendants[14] are not sufficient to establish specific jurisdiction over them in an Oklahoma court, where, as here, there are no allegations that the alleged injuries arise out of or relate to the activities of the non-diverse Defendants.

61.    Because this Court lacks personal jurisdiction over these Defendants, Plaintiffs have no ability to establish a cause of action against them in Oklahoma; thus, for the reasons set forth above, Cornerstone and aaiPharma have been fraudulently joined, and the presence of these potentially non-diverse Defendants should not defeat diversity jurisdiction.

**d.    The Non-Diverse Plaintiffs Are Fraudulently Misjoined.**

62.    For the reasons set forth above, including the fact that no allegations in the Petition actually tie the non-diverse Defendants to the non-diverse Plaintiffs, the non-diverse Defendants were fraudulently joined, and thus their presence should be

---

[13] Although Plaintiffs allege that "[a]t least one plaintiff is a resident of Maryland, the same state where Defendant Teva Biopharmaceuticals Inc. is a resident," Petition ¶¶ 94, but Teva Biopharmaceuticals is not a named Defendant.

[14] See discussion *supra*, indicating that the Petition does not allege that the North Carolina Plaintiff ingested a Cornerstone or aaiPharma product.

disregarded for purposes of determining the propriety of removal.    The fraudulent

joinder arguments above justify the removal of this case based on diversity of citizenship.

In addition, however, Plaintiffs' counsel has fraudulently misjoined Plaintiffs in an

improper attempt to destroy federal diversity jurisdiction and avoid removal of this action

to this Court.  Fraudulent misjoinder of Plaintiffs' claims is a separate and independent

reason justifying complete diversity of citizenship in this case.

63.    The Petition deliberately withholds the citizenship of each individual

Plaintiff and simply states that there is "[a]t least one" North Carolina plaintiff.  Petition ¶

92.

64.    The non-diverse Plaintiffs do not have any connection to the diverse

Plaintiffs; Plaintiffs used different propoxyphene products, manufactured by different

Defendants, prescribed by different doctors, dispensed by different pharmacies at

different times in different locations and suffered varying cardiovascular injuries with

some (but not others) suffering death. *See generally* Petition ¶ 91.

65.    More than a decade ago, the Eleventh Circuit Court of Appeals held that

"[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against

whom a plaintiff has no possibility of a cause of action." *Tapscott v. MS Dealer Svcs.*

*Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, *Cohen v. Office*

*Depot, Inc.,* 204 F. 3d 1069 (11th Cir. 2000).  The fraudulent misjoinder doctrine is an

extension of the Supreme Court's recognition that a defendant's "right of removal cannot

be defeated by a fraudulent joinder of a resident defendant having no real connection with

the controversy." *See id.,* quoting *Wilson,* 257 U.S. at 97.  Even where a colorable claim

27

is stated, the misjoined, non-diverse parties have "no real connection with the controversy" involving the diverse parties. *Id.*

66.    Under the fraudulent misjoinder doctrine, federal diversity jurisdiction exists where diversity is destroyed through misjoinder of parties. *See e.g.*, *Grennell v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 390, 395-60 (S.D. W. Va. 2004). "Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a)." *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001).    Accordingly, fraudulent misjoinder applies where, as in this case, Plaintiffs have improperly joined different claims that did not arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to common questions of law or fact. *See* FED. R. CIV. P. 20(a); 12 OKLA. STAT. ANN. § 2020.    Where fraudulent misjoinder applies, a court must sever the improperly joined claims into separate and distinct cases.

67.    In *Tapscott*, the claims all arose from the sale of service contracts, governed by Alabama statute.    The court concluded that "the alleged transactions involved in the 'automobile' class are wholly distinct from the alleged transactions involved in the 'merchant' class," even though the contracts in all transactions stemmed from the same state statutes.    77 F.3d at 1360.[15]    Specifically, it found that "[s]uch commonality on its face is insufficient for joinder." *Id.*    Holding that the "attempt to join these parties is so

---

[15] In *Tapscott*, the Court applied Federal Rule 20 to the fraudulent misjoinder analysis. Even if Oklahoma's joinder rule applies here, Oklahoma's permissive joinder rule "parallels the language of Federal Rule 20 . . . ." *A-Plus Janitorial & Carpet Cleaning v. Employers' Works' Comp. Ass'n*, 936 P.2d 916, 926 (Okla. 1997).

egregious as to constitute fraudulent joinder," the court affirmed the district court's (i) severance of the claims against the non-diverse defendants (the putative automobile class representatives) from those against the diverse defendant (the putative merchant class representative), and (ii) remand of only the claims against the non-diverse defendants to state court. *Id.*

68.    Similarly, in a case filed by 17 plaintiffs, 13 of whom asserted claims solely against diverse defendants, the Fifth Circuit Court of Appeals recognized, that the doctrine of fraudulent misjoinder is "a feature critical to jurisdictional analysis." *In re Benjamin Moore,* 309 F.3d 296, 298 (5th Cir. 2002). "[M]isjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction," the court said, and "the point [regarding misjoinder] cannot be ignored, since it goes to the court's jurisdiction and to the defendants' rights to establish federal jurisdiction following removal." *Id.*

69.    Many district courts around the country have applied the fraudulent misjoinder doctrine. For example, the *Diet Drug* MDL court denied remand where out-of-state plaintiffs were tacked on to a complaint with local plaintiffs in order to destroy diversity. *In re Diet Drugs Prods. Liab. Litig.*, No. Civ.98, 1999 WL 554584, at *5 (E.D. Pa. July 16, 1999). The court held that the strategy of joining out-of-state plaintiffs with local plaintiffs in an attempt to defeat federal diversity jurisdiction did not satisfy the requirements of FED. R. CIV. P. 20 that the claims of all plaintiffs joined in a single action arise out of the same "transaction[] or occurrence[]." *Id.* at **4-5. As here, "[p]laintiffs [did] not allege that they received the drug[] from the same source or any other similar connection." *Id.* at *3. "Given Plaintiffs' vast geographic diversity and lack of

29

reasonable connection to each other," the court held that the joinder of non-diverse plaintiffs with the local plaintiffs constituted improper joinder and "wrongfully deprive[d] the Defendants of their right of removal." *Id.* On that basis, the court denied plaintiffs' motion to remand and retained jurisdiction over the diverse plaintiffs and held that the non-diverse plaintiffs should be severed and dismissed. *Id.* at **3 4. *See also, In re Diet Drugs Prods. Liab. Litig.,* 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) ("[T]he claims of the pharmaceutical plaintiffs who had drugs prescribed by different doctors for different time periods do not arise out of the same 'transaction, occurrence, or series of transactions or occurrences.'").

70.    Similarly, in the *Rezulin* MDL, the court held that New York and New Jersey plaintiffs who had the same citizenship as the manufacturer defendants were misjoined with diverse plaintiffs under Rule 20. *In re Rezulin Prods. Liab. Litig.,* No. 00-civ-2843, 2002 WL 31496228, at *1 (S.D.N.Y. Nov. 7, 2002). In that case, plaintiffs did "not allege that they received [the medication] from the same source, that they were exposed for similar periods of time, or that they suffered similar injuries, if any." *Id.* The court severed and remanded the claims of the non-diverse plaintiffs "so as to preserve the defendants' right to removal of the remainder of the action" and retained jurisdiction over the diverse plaintiffs. *Id.; Green v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court.") (footnotes omitted).

71.    As noted above, the doctrine of fraudulent misjoinder is a widely recognized basis for the removal of cases involving multiple defendants and multiple plaintiffs (a) whose claims are unrelated and/or (b) where only a few plaintiffs assert claims against non-diverse defendants.  It is also particularly appropriate where, as here, no allegations in the Complaint actually tie the non-diverse Defendants to the non-diverse Plaintiffs.

72.    As such, this Court should disregard the allegations concerning the misjoined plaintiffs to the extent those allegations improperly attempt to defeat complete diversity, and determine that it has diversity jurisdiction over the remaining Plaintiffs as to whom complete diversity exists.

## IV.    THIS CASE IS INDEPENDENTLY REMOVABLE UNDER FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION

73.    As a separate and independent basis for removal, this action is also properly removable under 28 U.S.C. §§ 1331 and 1367.  Plaintiffs' claims against Generic Defendants are removable because they necessarily raise a substantial and disputed question of federal law.  In addition, all remaining claims are removable subject to the Court's supplemental jurisdiction.

### a.    Plaintiffs' Claims Against Generic Defendants Are Removable Because They Necessarily Raise Substantial Issues of Federal Law.

74.    The Supreme Court has held that state-law claims are removable under federal question jurisdiction pursuant to 28 U.S.C. § 1331 where they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may

entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

75.     Federal jurisdiction exists where a state law claim necessarily involves the construction or application of federal law. *See, e.g., D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 99 (2d Cir. 2001) ("[A] case is deemed 'to arise under' federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'") (alteration in original) (*quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)).

76.     In addition, this Court has original and removal jurisdiction of civil actions, such as this one, that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331, 1441(a).  Among the civil actions that "arise under" federal law are "state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. Such claims capture the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*  Thus, federal question jurisdiction also exists where, as here, a "state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

77.    The claims asserted in Plaintiffs' Petition meet both of these standards for federal question jurisdiction.    As the Eastern District of New York has held, claims against generic defendants are removable under *Grable* where, like Plaintiffs' claims here, they allege that the generic defendants are liable in failure-to-warn due to breach of their federal duty to use the same FDA-approved labeling as the brand defendants. *Bowdrie v. Sun Pharm. Indus. Ltd.*, No. 12-CV-853 (WFK) (MDG), 2012 WL 5465994 (E.D.N.Y. Nov. 9, 2012).

78.    As recognized by the Supreme Court in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), generic defendants are prohibited by federal law from independently changing the labeling for their products, but are instead required by federal law to use labeling identical to the FDA-approved labeling used by the brand defendant. *See id.* at 2578.

79.    The plaintiffs in *Bowdrie* alleged that the generic defendants were liable on state-law failure-to-warn claims because they breached their duty to employ the same labeling as the brand defendants.    2012 WL 5465994, at *1.    The *Bowdrie* court held that the plaintiffs' state-law claims that generic defendants "failed to meet their ongoing duty of sameness by failing to . . . update their FDA-approved labeling to mirror updated [brand drug] labeling . . . . necessarily raise[d] a federal question." 2012 WL 5465994, at *3 ("A question of federal law is a necessary element of Plaintiffs' state law causes of action.").    The court further held that this federal question was substantial because it:

> goes far beyond simply incorporating a federal standard into a state law cause of action.  To the extent they invoke the "federal duty of sameness," Plaintiffs' causes of action implicate the labeling requirements for generic

drug manufacturers nationwide. The federal question present in this case involves a responsibility that is in the first instance, and primarily, federal: regulation of the manufacture, marketing, and distribution of drugs.

*Id*. at \*4. Thus, the court held, the plaintiffs' claims were removable under federal question jurisdiction under the rule of *Grable*. *Id*. at \*3. The same reasoning applies to this action, where, just like in *Bowdrie*, Plaintiffs claim that Generic Defendants are liable in failure-to-warn due to their alleged failure to update their labeling to conform to the brand. See Petition ¶¶ 6-7.

80.    It is irrelevant that Plaintiffs may not have intended to plead a state law cause of action that raises a substantial and disputed issue of federal law to establish a basis for jurisdiction arising from a federal question. In *Grable*, the Supreme Court held that federal question jurisdiction exists when a state law cause of action raises a substantial federal question that is in dispute. *Grable*, 545 U.S. at 316-20. Plaintiffs may not avoid this result through artful pleading. *See Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) (holding that "[i]f a court concludes that plaintiff has 'artfully pleaded' claims" by omitting to plead federal questions, "it may uphold removal even though no federal question appears on the face of the plaintiff's complaint").

81.    Accordingly, Plaintiffs' failure-to-update claims against Generic Defendants are properly removable under federal question jurisdiction pursuant to the rule of *Grable* because they necessarily (indeed, affirmatively) raise a substantial, disputed issue of federal law.

34

### b. Supplemental Jurisdiction Extends to All Other Claims.

82.    This Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  As set forth above, Plaintiffs' claims against Generic Defendants are within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331.  All other claims in this action arise out of the same case or controversy.

83.    Accordingly, this Court may find supplemental jurisdiction over all other claims in this action.

## V. PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

84.    **Service.** On May 7, 2015, Lilly was served with the summons and Petition. Thus, this removal is timely under 28 U.S.C. § 1446(b), because it is within 30 days of the date Lilly was served.

85.    **Consent.** All twenty-four (24) **served** defendants among the twenty-nine (29) defendants listed in plaintiffs' Petition--which are also enumerated in the caption of this Notice of Removal--have provided their written consent to this removal, including Xanodyne which has consented to this removal without waiving and while preserving its defense based on improper service.[16] Those consents are attached hereto as Exhibits 6 - 14. No other party's consent is required for this Notice of Removal. See 28 U.S.C.

---

[16] In consenting to this removal, the consenting Defendants do not waive any arguments or defenses, including, but not limited to, lack of jurisdiction or insufficiency of service of process, or any other grounds as a defense to Plaintiffs' Petition.

§1446 (2)(A). The following named defendants **have not been served**: #4 AAIPharma, Inc.; #5 AAIPharma, LLC.; #6 AAIPharma Development Services, Inc.; #7 Neosan Pharmaceutical Pharmaceuticals Inc. (See Notice of Removal ¶17); and #26 Covidien PLC. (See Notice of Removal ¶28). The consent of these unserved defendants is not required for this Notice of Removal. See 28 U.S.C. §1446(b)(2)(A).

86.    **Forum Defendant.** As set forth fully above, in Section II.b., PD-Rx has been fraudulently joined and its citizenship as an Oklahoma Defendant should be disregarded. *See Wilson,* 257 U.S. at 97 (stating that plaintiffs cannot defeat removal by the "fraudulent joinder of a resident defendant having no real connection with the controversy").

87.    **Venue.** The United States District Court for the Western District of Oklahoma embraces the county in which the state action was filed, and thus, this Court is a proper venue for this action pursuant to 28 U.S.C. § 1441(a).

88.    **State Court.** Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.2(a), copies of the process and pleadings served on Lilly and the state court docket sheet are attached to this Notice of Removal as Exh. 1-5.

89.    **Notice.** Lilly is filing written notice of this removal with the Clerk of the State Court in which the action was filed, pursuant to 28 U.S.C. § 1446(d). Copies of the Notice to Adverse Parties of Removal to Federal Court, together with this Notice of Removal, are being served upon Plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d).

90.    If any question arises as to the propriety of the removal of this action, Lilly requests the opportunity to brief any disputed issues and to present oral argument in support of the position that this action is properly removable.

91.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Lilly's or any consenting or joining Defendant's right to assert any defense or affirmative matter including, without limitation, the defense of (a) lack of personal jurisdiction; (b) improper or inconvenient venue; (c) insufficiency of process; (d) insufficiency of service of process; (e) improper joinder of claims and/or parties; (f) failure to state a claim; (g) failure to join an indispensable party; or (h) any other procedural or substantive defense available under state or federal law.

WHEREFORE, Lilly respectfully removes this action from the District Court for Stephens County, Oklahoma, to this Court, pursuant to 28 U.S.C. § 1441, *et seq.*

Respectfully submitted,

Robert H. Alexander, Jr., OBA #197
John J. Love, OBA #5536
Robert W. Ivy, OBA # 20909

--of the firm-

**The Law Office of**
**Robert H. Alexander, Jr., p.c.**
First National Center, 24th Floor
120 North Robinson - Post Office Box 868
Oklahoma City, Oklahoma 73101-0868
(405) 232-0803
(405) 232-0519 Fax
**Attorneys for Defendant**
**Eli Lilly and Company**

37

## CERTIFICATE OF SERVICE

I certify that on May 26, 2015, I electronically transmitted the attached document

to the Clerk of Court using the ECF System for filing and transmittal of a Notice of

Electronic Filing to the following ECF registrants:

Matthew J. Sill, OBA #21547
SILL LAW GROUP, PLLC
14005 N. Eastern Avenue
Edmond, OK 73013
Telephone: 405-509-6300
Facsimile: 405-509-6268

Robert H. Alexander, Jr.

I\5165650.1